UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANEL CHRISTINE LITTLE,

                Plaintiff,

v.                                                                                              1:19-CV-0897
                                                                                                (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | ELIZABETH HAUNGS, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS CANNING, ESQ.<br>FRANCIS TANKARD, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 13.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**      **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1984. (T. 95.) She has a bachelor's degree. (T. 276.) Generally, Plaintiff's alleged disability consists of anxiety, depression, and back and neck injuries. (T. 275.) Her alleged disability onset date is August 28, 2015. (T. 95.) Her date last insured is December 31, 2017. (T. 95.) Her past relevant work consists of cashier and teacher aide. (T. 276.)

### B. Procedural History

On November 24, 2015, Plaintiff applied for a Period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 95.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 2, 2018, Plaintiff appeared before the ALJ, Maria Herrero-Jaarsma. (T. 38-79.) On August 21, 2018, ALJ Herrero-Jaarsma issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-37.) On May 8, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-32.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2017 and Plaintiff had not engaged in substantial gainful activity since August 28, 2015. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: lumbar spine intervertebral disc degeneration; cervical spine

disc degeneration; bipolar type I with depression and mania; and anxiety disorder with panic attacks without agoraphobia.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), specifically:

> she is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for four hours in an eight hour work day, and sit for six hours in an eight hour workday.  [Plaintiff] can alternate between sitting and standing once every thirty minutes for five minutes without increasing the time off-task.  [Plaintiff] is able to occasionally push and pull, climb ramps and stairs, balance on level surfaces, stoop (i.e. bend at the waist), and kneel, but she is unable to crouch (i.e. bend at the knees) or crawl.  Plaintiff] is frequently, but not constantly, able to reach bilaterally, including overhead, in front, and laterally.  [Plaintiff] is frequently, but not constantly, able to move her neck in rotation, flexion, and extension.  [Plaintiff] is unable to tolerate exposure to unprotected heights, moving machinery, or moving mechanical parts.  In addition, [Plaintiff] is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and make simple work-related decisions.  [Plaintiff] is able to work in a low-stress environment, defined as an environment with no supervisory responsibilities, no independent decision-making required except with respect to simple, routine decisions, and few, if any, work place changes in work routines, processes, or settings.  [Plaintiff] is able to perform work that involves frequent contact and interaction with supervisors and co-workers and occasional contact with the public.

(T. 21.)[1]  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 29-30.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's "highly specific" RFC finding was not supported by substantial evidence because the "limitations do not correspond with any specific evidence in the record." (Dkt. No. 9 at 10-14.) Second, and lastly, Plaintiff argues the ALJ improperly relied on Plaintiff's status as a mother to find Plaintiff capable of work in the national economy. (*Id*. at 14-17.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 12.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ's RFC finding was based on the record. (Dkt. No. 11 at 21-27.) Second, and lastly, Defendant argues the ALJ correctly considered childcare performed by Plaintiff. (*Id*. at 27-29.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.     RFC Determination

Plaintiff argues the ALJ assessed "very specific and pointed mental and physical limitations in her RFC findings[; however,] these limitations do not correspond with any specific evidence in the record – be it medical opinions, records, or Plaintiff's own testimony." (Dkt. No. 9 at 10.)  Plaintiff argues the limitations assessed by the ALJ are therefore not supported by substantial evidence, but instead based on the ALJ's lay opinion.  (*Id.*)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404,1545(a)(1), 416.945(a)(1)[2].  The ALJ is responsible for

---

[2]     Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was

assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

In general, the ALJ is obligated to formulate a plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

To be sure, remand may be appropriate, where an ALJ fails to assess Plaintiff's "capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). In other words, "the ALJ must simply explain the link between his RFC assessment and the record evidence supporting that

---

filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

7

assessment." *Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016).

### i.)     Physical RFC

Here, the ALJ properly assessed Plaintiff's physical RFC based on the record as a whole and the RFC was supported by substantial evidence in the record. The ALJ's thoroughly written decision provided sufficient analysis and explanation linking the evidence in the record to the physical RFC. The ALJ relied on the medical opinion provided by the consultative examiner, objective medical observations from treating and other providers, and Plaintiff's testimony.

The ALJ afforded great weight to the opinion of consultative examiner Hongbiao Liu, M.D. (T. 28.) On March 9, 2016, Dr. Liu examined Plaintiff and objective imagining. (T. 356-361.) Dr. Liu opined Plaintiff had "mild to moderate" limitations for prolonged walking, bending, kneeling, and overhead reaching. (T. 359.) Dr. Liu's opinion is consistent with the exertional demands of light work. *See Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *10 (W.D.N.Y. June 26, 2019) (light work not inconsistent with moderate exertional limitations); *see Burch v. Comm'r of Soc. Sec.*, No. 17-CV-1252, 2019 WL 922912, at *4 (W.D.N.Y. Feb. 26, 2019) (RFC for light work supported by moderate limitations for exertional activities and other substantial evidence in the record). No other medical source provided work related physical functional limitations.

In formulating Plaintiff's physical RFC, the ALJ also relied on the objective medical evidence in the record. Indeed, as outlined by the ALJ, Dr. Liu observed Plaintiff walked with a normal gait, could walk on heels and toes with moderate difficulty,

could not fully squat, had a normal stance, needed no help changing or getting on and off the exam table.  (T. 23, 358.)  The ALJ further considered treatment notations provided by treating sources with Medical Care of Western New York at Buffalo noting decreased range of motion in Plaintiff's cervical and lumbar spine.  (T. 23, 374)  The ALJ noted other positive findings on examination, such as reduced range of motion in her shoulders.  (T. 24.)

Lastly, in formulating the physical RFC, the ALJ also relied on Plaintiff's testimony.  Consistent with Plaintiff's testimony, the ALJ provided a sit/stand option limiting Plaintiff to alternate between sitting and standing once every thirty minutes.  (T. 21, 22.)  Plaintiff's testimony and the treatment notes may constitute "relevant evidence [that] a reasonable mind might accept as adequate to support" the RFC as determined by an ALJ.  *Johnson v. Colvin*, 669 F. App'x 44, 45 (2d Cir. 2016) (internal quotations omitted); *see also Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on Plaintiff's own testimony" together with relevant medical evidence).

The ALJ specifically concluded Plaintiff's back condition limited her ability "to perform the postural activities of work including pushing and pulling, climb[ing] ramps and stairs, balancing on level surfaces, stooping and kneeling and crawling and also limited her ability to lift."  (T. 25.)  The ALJ reasoned Plaintiff's reduced ability to squat and reach did not prevent her from performing activities of daily living, including housework and childcare.  (*Id*.)  The ALJ therefore concluded Plaintiff could occasionally lift 20 pounds and frequently lift ten pounds, occasionally reach overhead, and with other additional non-exertional impairments.

The ALJ further concluded, due to Plaintiff's neck impairment, she could frequently perform neck movements. (T. 25.) The ALJ noted objective observations of reduced range of motion in the cervical spine and imaging. (*Id*.) The ALJ noted Plaintiff's condition was managed with medication and she did not seek additional treatment for her neck impairment. (*Id*.)

Overall, although the physical RFC did not mirror a specific medical opinion or treatment notation in the record, the RFC reflected Plaintiff's abilities based on the record as a whole. The ALJ's written decision provided analysis linking the evidence in the record to the RFC determination. Therefore, Plaintiff's argument that the ALJ's physical RFC did not correspond to evidence in the record fails.

    **ii.)**     **Mental RFC**

Plaintiff argues the ALJ's mental RFC cannot be supported by substantial evidence because the ALJ relied on the stale opinion provided by consultative examiner Susan Santrapia, Ph. D. (Dkt. No. 9 at 12-14.) Plaintiff argues Dr. Santrapia's opinion was rendered stale because subsequent evidence in the record indicated Plaintiff's mental condition deteriorated. (*Id*.)

In formulating Plaintiff's mental RFC, the ALJ afforded Dr. Santrapia's medical source statement great weight. (T. 28.) Dr. Santrapia examined Plaintiff and opined she was:

> able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits.

(T. 353.)  Non-examining State agency medical consultant, Dr. Dipeolu reviewed the record as of March 2016 and opined Plaintiff's mental health impairments were "not severe."  (T. 110.)

In addition to Dr. Santrapia's opinion, the ALJ relied on Dr. Dipeolu's opinion; objective treatment observations provided by treating sources Ramesh Konakanchi, D.O. and Devinalini Misir, M.D.; and Plaintiff's testimony.  (T. 26-29.)  Indeed, the ALJ's mental RFC included more limitations than provided by Drs. Santrapia and Dipeolu.  The ALJ limited Plaintiff to only simple tasks, low-stress work, and occasional contact with public.  (T. 21.)

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).  A medical opinion may be stale if it does not account for the plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence.  *Blash v. Comm'r of Soc. Sec. Admin.,* 813 F. App'x 642, 643 (2d Cir. 2020).

In support of her argument, Plaintiff relies on two incidents in which she required emergency mental health treatment.  (Dkt. No. 9 at 13.)  The first incident involved Plaintiff needing an emergency medication refill due to last minute travel to care for her

son. (T. 391-393.) Plaintiff required an emergency medication refill due to forgetting her medications in Buffalo, not due to a deterioration in her mental health. Therefore, this incident does not support Plaintiff's argument her condition deteriorated.

The second incident involved "vague suicidal ideation and superficial cutting," which the ALJ considered in her overall assessment of Plaintiff's mental impairments. (T. 26.) In May 2017, Plaintiff presented to the emergency department requesting "detox." (T. 499.) Plaintiff reported her significant other threatened to take her children away if she did not seek detox treatment. (*Id*.) Plaintiff denied substance abuse but admitted to smoking marijuana "frequently." (*Id*.) Plaintiff reported feeling "very stressed" and "cut her leg." (T. 501.) Plaintiff acknowledged cutting herself was a "poor choice" and stated she did not want to do it again. (*Id*.) Plaintiff did not want outpatient follow-up, was provided information regarding outpatient treatment, and discharged home. (*Id*.) Plaintiff was observed to be cooperative, calm, with normal speech, dysphoric mood, appropriate affect, organized thought process, intact memory, and with limited insight and fair judgment. (T. 487-488.) Plaintiff was assessed as low risk to self and others. (T. 489.) Overall, Plaintiff's May 2017 emergency treatment does not contradict earlier treatment and the ALJ considered this specific episode in assessing Plaintiff's mental RFC.

Overall, the ALJ considered Plaintiff's emergency treatment and subsequent mental health treatment notations. (T. 26.) In June 2017, subsequent to Plaintiff's May emergency room visit, Plaintiff reported to Dr. Konakanchi she had no overt panic attacks or mood lability, was sleeping well, was not as withdrawn, and was "otherwise coping better." (T. 539.) Dr. Konakanchi observed Plaintiff's mood and affect were

"euthymic;" her speech was clear and coherent; she denied suicidal ideation/plan/intent; her concentration was fair; her judgment was fair; and her memory was intact. (*Id*.) In October 2017, Plaintiff reported no overt mood lability or panic attacks. (T. 538.) Therefore, despite an episode requiring emergency mental health treatment, the episode was acute in nature and did not represent a deterioration of Plaintiff's condition.

Because Plaintiff's emergency medical treatment did not contradict reports of Plaintiff's functioning and the ALJ thoroughly discussed Plaintiff's mental health treatment, including her emergency treatment, in assessing Plaintiff's overall mental functional capacity, remand is not warranted. *See Blash,* 813 F. App'x at 643 (remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence).

Plaintiff next argues the ALJ "was out of her depth" in formulating a mental RFC "without any real guidance from a medical source." (Dkt. No. 9 at 12-13.) The ALJ's mental RFC was proper and supported by substantial evidence in the record.

As outlined above, the ALJ relied on the medical source opinions provided by Dr. Santarpia and Dr. Dipeolu. (T. 25.) Indeed, the ALJ found a more restrictive mental RFC. Remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record. *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020). In formulating the RFC, the ALJ further relied on objective mental observations provided by treating sources and Plaintiff's testimony. (T. 25-29.) Therefore, Plaintiff's argument that the

13

ALJ's mental RFC was unsupported because there was no guidance from a medical source, is without merit.

Overall, the ALJ's physical and mental RFC determinations were proper and supported by substantial evidence in the record.

### B.       Subjective Complaints

The ALJ must employ a two-step analysis to evaluate the plaintiff's reported symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929[3].  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. §§ 404.1529(a), 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations

---

[3]       On March 28, 2016, SSR 16-3p superseded SSR 96-7p and eliminated the use of the term "credibility" as the regulations do not use the term.  SSR 16-3P (S.S.A. Mar. 16, 2016) ("we are eliminating the use of the term 'credibility' from our sub-regulatory poly, as our regulations do not use this term").

and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Plaintiff argues the ALJ improperly equated Plaintiff's ability to have custody of two children with the ability to work in the national economy. (Dkt. No. 9 at 14-17.) Here, the ALJ appropriately considered Plaintiff's ability to parent as one factor in her overall activities of daily living. Contrary to Plaintiff's assertion, the ALJ did not equate the ability to parent with the ability to perform full time gainful employment.

First, as outlined above, ALJs should consider a plaintiff's activities of daily living in evaluating plaintiff's allegations of limitations due to symptoms. *See* 20 C.F.R. §§ 404.151529(c)(3)(i), 416.929(c)(3)(i). In her written decision, the ALJ considered Plaintiff's ability to care for her two children. At step three, the ALJ noted Plaintiff was the "major caregiver" to her two children. (T. 20.) In her step four determination, the ALJ acknowledged Plaintiff cared for her two children; however, the ALJ also noted Plaintiff required assistance of her boyfriend to bathe children as well as cook and clean. (T. 22.) The ALJ noted Plaintiff's testimony at the hearing that although she lives alone with her children, she requires assistance from family. (*Id*.)

In evaluating Plaintiff's subjective complaints, the ALJ determined Plaintiff's testimony regarding her physical and mental limitations was inconsistent with her activities of daily living. (T. 22, 24-25.) One such activity was the ability to care for her two children. The ALJ relied on Plaintiff's reports to providers that she was independent with mobility and activities of daily living. (T. 24.) The ALJ determined although Plaintiff had "some limitations" in the home, she was "generally" able to perform childcare, cook, clean, and shop. (*Id*.) In assessing Plaintiff's back impairment, the ALJ considered she

15

was the primary caregiver of two children and did "everything for them." (T. 25.) However, the ALJ noted Plaintiff could not carry her 38-pound child and need assistance in "some areas" of childcare. (*Id*.) "It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In addition to her ability to perform most of the childcare, the ALJ also considered Plaintiff's testimony she could perform housework and could lift up to ten pounds. (T. 25.) The ALJ considered Plaintiff's ability to attend school, travel to New York City with her ill son, and travel for pleasure as activities which were inconsistent with Plaintiff's testimony of limiting effects of her impairments. (*Id*.) As the ALJ summarized, Plaintiff's "activities of daily living including caring for her children, traveling, and performing housework are inconsistent with the level of walking and standing impairments she alleges." (*Id*.) The ALJ also noted activities such as Plaintiff's ability to drive a car, manage finances, leave her home for doctor's appointments. (T. 27.)

Second, the ALJ considered Plaintiff's ability to care for her children as one of many factors in assessing her subjective complaints. *See Roman v. Colvin*, 278 F. Supp. 3d 671, 677 (W.D.N.Y. 2017) (ALJ properly considered plaintiff's ability to care for children, prepare meals with help, do laundry, do light housework and grocery shop in assessing plaintiff's subjective complaints); *see Raftis v. Comm'r of Soc. Sec.,* No. 5:17-CV-0514, 2018 WL 1738745, at *9 (N.D.N.Y. Apr. 6, 2018) (ALJ properly noted plaintiff's ability to care for two small children as indication that plaintiff's testimony regarding limiting effects of her symptoms was not as severe as alleged). In addition to

16

Plaintiff's activities of daily living, the ALJ considered Plaintiff's treatment, effectiveness of medication, and objective observations in the record.  (T. 25.)

Lastly, the ALJ did not impermissibly equate the ability to parent with the ability to perform substantial gainful employment.  (Dkt. No. 9 at 15.)  The ALJ properly considered Plaintiff's ability to care for her two children as one example of her activities of daily living which the ALJ determined to be inconsistent with her alleged limitations due to symptoms of her impairments.

In sum, the ALJ properly formulated an RFC based on the record as a whole and substantial evidence supported the ALJ's determination.  The ALJ also properly assessed Plaintiff's subjective complaints under the factors outlined in the regulations.  Although the ALJ considered Plaintiff's ability to parent as one factor of Plaintiff's activities of daily living, the ALJ did not equate Plaintiff's ability to parent with the ability to perform full time gainful employment.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      October 22, 2020

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge